278 So.2d 847 (1973)
Grady W. METOYER et ux., Plaintiff-Intervenor Appellant,
v.
AETNA INSURANCE COMPANY et al., Defendant-Third-Party Defendant Appellee,
Herman A. PONTHIER, Defendant-Third-Party Plaintiff Appellant.
No. 4194.
Court of Appeal of Louisiana, Third Circuit.
May 30, 1973.
Rehearings Denied June 27, 1973.
*848 Gravel, Roy & Burnes, by Chris J. Roy, Alexandria, for third-party plaintiff-appellant.
Neblett, Fuhrer & Broussard, by Leonard Fuhrer, Alexandria, for plaintiff-intervenor-appellant.
Gist, Methvin & Trimble, by David A. Hughes, Alexandria, for defendant-appellee.
Before FRUGÉ, SAVOY, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
On January 16, 1971, Alice Loranne Metoyer, a six year old child, was struck and killed by a one ton pickup truck which was owned and being driven by Herman A. Ponthier. At the time, Ponthier was returning to his home from having delivered a worn out tractor to a tractor dealer in Alexandria, Louisiana, which he had traded for some parts that he needed. The truck was pulling an empty nine ton capacity flatbed trailer described as being 21½ feet long and approximately 7 feet wide. It had six wheels on three axles with independent electric brakes on each wheel. The empty weight of the trailer was 3,100 lbs.
Grady W. Metoyer and Susie McClinton Metoyer, parents of the slain child, sued Ponthier and his liability insurer, Aetna Insurance Company, for the wrongful death of their daughter. Aetna answered, and denied coverage alleging that due to certain exclusions contained in its policy, there was no coverage while the above described trailer was being towed. Ponthier answered and filed a third party action against Aetna demanding coverage and damages for its refusal of coverage.
Both parties filed motions for summary judgment on the question of insurance coverage and plaintiffs intervened and likewise filed a motion for summary judgment on the same issue. All of the motions were denied by the District Court due to insufficient evidence. Second motions for summary judgment on the same point were subsequently filed by all parties, with additional evidence. On the second attempt, Aetna's motion was sustained, as the trial judge concluded that there was no insurance coverage of the accident in question because of the involvement of the trailer. Plaintiff's suit against Aetna was therefore dismissed, and plaintiffs and defendant Ponthier have appealed that judgment to this court.
The exclusionary clause relied upon by Aetna reads as follows:
This policy does not apply:
. . . . .
. . . . .
(c) under coverages A and B, while the automobile is used for the towing of *849 any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company;
A trailer is defined in the policy thusly:
(2) Trailerunder coverages A, B and division 1 of coverage C, a trailer not described in this policy, if designed for use with a private passenger automobile, if not being used for business purposes with another type automobile, and under division 1 of coverage C, if not a home, office, store, display or passenger trailer;
A "private passenger automobile" is defined in these words:
(b) Private Passenger Automobile. The term "private passenger automobile" means a private passenger, station wagon or jeep type automobile, and also includes under coverages A, B and division 1 of coverage C any automobile the purposes of use of which are stated in the declarations as "pleasure and business".
From the above Aetna argues that there was no insurance coverage on its part of this accident because Ponthier was towing a trailer at the time that was not designed for use with "a private passenger, station wagon or jeep type automobile". Plaintiffs and defendant Ponthier counter that the trailer was designed for use with such vehicles in that such vehicles could in fact pull it; and that at the very least the exclusionary clause is ambiguous and should be interpreted in a manner favorable to the insured.
The president and the engineering manager of the company that manufactured the trailer testified by deposition. When questioned about what type of vehicle their trailer was designed for, they would only say that a vehicle of adequate size should be used to tow it. They recommended that fifteen to twenty percent of the weight carried by the trailer be transferred to the towing vehicle, i.e. that the tongue weight of the trailer should be 15 to 20 percent of the total weight. Thus it would appear from their testimony that any vehicle capable of carrying 15 to 20 percent of the weight of the trailer would be of adequate size to tow it and hence one for which the trailer was designed.
The depositions of two experts in automotive engineering were submitted to the trial court. These were given by Mr. Alvin Doyle, Jr., who has been an automotive consultant for some 43 years and Professor Joseph H. Barnwell, a professor of mechanical engineering at Louisiana Tech University. Both were questioned at length regarding the specifications of the trailer and the suitability of various vehicles to tow it.
Mr. Doyle was of the firm opinion that an International Travelall stationwagon, Model 1210, is a perfectly adequate vehicle to tow the trailer under any conditions. He explained that the rear axle capacity of that vehicle is 5,500 lbs., and that fifteen per cent of the weight of the trailer when fully loaded is only 3,195 lbs. Mr. Doyle disagreed with the tongue load figures given by the manufacturer of the trailer and stated that the range thereof should be from ten to fifteen per cent of the load and not fifteen to twenty per cent as stated by them. It was his opinion that the trailer was designed to be towed by any vehicle capable of doing so (a view not inconsistent with that of the manufacturers) and that the Travelall wagon could tow it with power and capacity to spare.
Professor Barnwell disagreed and opined that the International Travelall was not designed to tow the trailer loaded. In reference to the 5,500 lb. capacity of the rear axle he stated that such includes the weight of the vehicle itself. He admitted however that with the use of equalizer bars, normally used when hauling heavy *850 trailers, the tongue weight of the trailer would be distributed to both axles of the towing vehicle, and that the Travelall wagon could carry a load of 3,665 lbs. This, of course, is well above the 3,195 lbs. that would constitute fifteen per cent of the loaded weight of the trailer.
There was considerable other testimony in the depositions, pro and con, as to whether various other vehicles were suitable for towing the trailer, but we need not discuss it here in view of our conclusion. We find that the foregoing discussion alone, reveals that there are genuine issues as to material facts. Inter alia there are the questions of was the trailer in question "designed" to be towed by a station wagon type vehicle? For that matter, is the International Travelall Wagon a station wagon type vehicle?
We are inclined to think that the foregoing discussion of the evidence indicates that affirmative answers to those questions would be in order, as the International Travelall Wagon is apparently a station wagon type vehicle which is quite capable of towing the trailer. Without so deciding it appears to us that at the very least the language of the policy, insofar as it allegedly excludes coverage, is filled with ambiguity and should be construed strictly against the company that drew up the policy, and in favor of coverage. LSA C.C. Art. 1957; Schonberg v. New York Life Insurance Company, 235 La. 461, 104 So.2d 171; Hartford Fire Insurance Company v. Roger Wilson, Inc., La.App., 252 So.2d 161 writ refused, 259 La. 939, 253 So.2d 381 and 259 La. 942, 253 So.2d 382; Blanchard v. Hanover Insurance Company, La.App., 250 So.2d 484; West v. City of Ville Platte, La.App., 237 So.2d 730. Accordingly there seems to be error in the trial court's conclusion denying insurance coverage.
There exists, however, a far more fundamental error in the case at bar, the granting of summary judgment. It is elementary that a summary judgment may not be rendered unless the pleadings, depositions, affidavits, etc., show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA CCP Arts. 966-967, Carney v. Hartford Accident and Indemnity Company, La.App., 250 So.2d 776; Thomas v. Signal Insurance Company, La. App., 236 So.2d 874. The summary judgment procedure should be used sparingly and not as a substitute for trial. Lake Charles Harbor & Terminal Dist. v. Farquhar, La.App., 196 So.2d 847; Brown v. B & G Crane Service, Inc., La.App., 172 So.2d 708. Furthermore, it is not the function of the court to determine the merits of the issues raised on a motion for summary judgment, but rather it must limit itself to a determination of whether there is genuine issue of material fact. Owens v. A A A Contracting Company, Inc., La. App., 219 So.2d 226; Aymond v. Missouri Pacific Railroad Company, La.App., 179 So.2d 460. In doing so therefore, the trial court was in error, and the summary judgment granted in favor of Aetna must be reversed and set aside.
For the foregoing reasons the judgment of the district court is reversed and the case is remanded to the Ninth Judicial District Court, Parish of Rapides, for further proceedings not inconsistent with the views herein expressed.
Reversed and remanded.