280 So.2d 231 (1973)
R. L. LANDRY, Individually And As Administrator of the Estate of His Minor Son, Dean Landry
v.
E. A. CALDWELL, INC., et al.
v.
SEARS, ROEBUCK & COMPANY, Third Party Defendant.
No. 9402.
Court of Appeal of Louisiana, First Circuit.
June 20, 1973.
*232 Jacob D. Landry, New Iberia, for Third Party Plaintiffs-Appellants, E. A. Caldwell, Inc., Robert Crooms and Continental.
John L. Glover, Baton Rouge, for Third Party Defendant-Appellee, Sears.
Before LANDRY, TUCKER and PICKETT, JJ.
*233 LANDRY, Judge.
This appeal by defendants, E. A. Caldwell, Inc., its employee, Robert Crooms, and its liability insurer, Continental Insurance Company, is from a summary judgment granted in favor of third party defendant, Sears, Roebuck & Company, dismissing appellants' third party demands instituted incident to a suit brought against appellants by plaintiff, R. L. Landry, individually and on behalf of his minor son, Dean Landry. We affirm.
The original action seeks recovery from defendants for damages for personal injuries sustained by young Landry in an accident which occurred January 10, 1970, when an "Allstate" motor scooter, being operated by the lad, was struck by a truck belonging to Caldwell and being operated by Crooms. Plaintiff's petition alleges the motor scooter malfunctioned at the time of the accident, and that Crooms was guilty of various acts of negligence proximately causing the accident. After Sears was third partied by appellants, plaintiff made Sears a defendant in the original action; this demand, however, was subsequently dismissed on plaintiff's motion.
In essence the third party demand against Sears is based on alleged products liability. It is asserted that the motor scooter in question, admittedly manufactured by Sears, malfunctioned in that its throttle mechanism jammed in a wide open position, and that the clutch failed to disengage causing the rider to lose control. The cause of the averred malfunctioning is attributed to the declared negligent manufacture of a scooter having a mechanically defective throttle and clutch.
To support its motion for summary judgment, Sears introduced several affidavits and depositions. Appellants filed no counter affidavits or depositions whatsoever.
In general, the affidavits and depositions by Sears show the scooter in question was in reality a hybrid vehicle composed of parts from two "Allstate" scooters, which for purposes of this litigation, were manufactured by Sears. One of the vehicles, a blue and red motor bike, was purchased by Charles R. Besse, in December, 1965, for his son, Ferdinand. The Besse youth used the vehicle regularly for about a year. Thereafter, it was stored until sold in March or April, 1969, to Willie James, a negro male, for $75.00. When sold, the engine was "frozen up" and inoperable. From James, the vehicle went to an unidentified bondsman, who acquired same upon James' default in payment of a bond premium or fee. The machine was next acquired by a Mr. Dodd, manager of a housing or apartment complex. In June or July, 1969, Gene Free, a minor, obtained the vehicle from Dodd in exchange for grass cutting. During Free's ownership, which lasted about five months, the vehicle, which was in poor condition, was used for only about two months. The remainder of the time, it was left outside in the elements. During this period, young Free's father removed the spark plug wires to keep his son from running the vehicle through the yard.
The second scooter used in fabricating subject vehicle was a "white scooter", the same model Allstate as the red and blue one. In reality, it was merely a "frame" with attached handlebars and fenders. It had no seat, engine, wheels, gas tank, brakes, clutch or control cables or levers. Charles Palombo, the first known owner of this vehicle, obtained it from an unknown acquaintance who, upon moving away, gave it to Palombo in the summer of 1969, in preference to discarding it as junk. Upon urging by his father, young Palombo gave the frame to Gene Free who then owned the blue and red machine. Together the Palombo and Free youths removed the engine, wheel, clutch and brake and throttle cables from the blue machine and installed them on the white frame which was in better condition than the frame of the blue scooter.
*234 Palombo connected the throttle cable from the twist grip on the right handlebar to the carburetor. He also installed the clutch cable, but could not connect it to the clutch lever because there was no such lever on the left handlebar. Palombo adjusted the back wheel brake which operated from a rod and foot pedal. He noted there were no front wheel brakes. He explained that the clutch is part of and located inside the engine, the clutch on this bike being an automatic one without gears. The throttle he installed was a standard twist grip type.
An affidavit by Gene Free shows that after he and Palombo finished transferring parts from the blue and red bike to the white scooter, the white scooter still had no brakes or brake cables. It also was without a seat or gas tank and its clutch cable remained disconnected because a little ball by which the control cable was attached to the clutch line had been broken off. However, the clutch on the bike was in operating order and would function upon manual operation of its lever. He never did ride the bike as it had no seat or gas tank. He started and ran the engine by pouring gasoline directly into the carburetor. He noted the scooter had a standard twist grip throttle when he sold it to Landry. He considered the scooter to be in generally bad condition, estimating it to be about 30% as good as a new one. Free traded the bike to Landry for another type vehicle. He gave Landry title papers to the blue and red bike because the engine from that vehicle was then part of the white scooter.
Dean Landry's deposition discloses he did considerable work on the vehicle in question. He installed a gas tank and replaced the throttle with a push pull type mounted in the center of the handlebars. He never changed the clutch, but had adjusted it many times. On one or two previous occasions, the clutch had failed to operate properly. The clutch operated from a handlebar squeeze type control. After his adjustments of the clutch, he would have to squeeze the control all the way down to the handlebar for it to operate. Because the clutch control cable became detached every now and then from the control lever near the engine, he made an adjustment with a crescent wrench. He asserted that he did regularly grease the control cables. On the day of the accident, he had tightened or attempted to tighten the clutch. At the time of the accident, he started the vehicle in gear in the yard of a friend he was visiting. All of a sudden, the bike threw him out on the road. As he stated: "I had the clutch in, and when I cranked it up, it was in gear; so I pulled on the clutch and I hit the pavement, and it threw me up in the air."
On April 6, 1971, the scooter was examined by Robert E. Williams, Mechanical Engineer, in charge of a Sears testing laboratory located at Fort Meyers Beach, Florida. The laboratory tests mechanical devices manufactured and/or sold by Sears, including motor bikes, motorcycles, minibikes and other motorized recreational vehicles. He found the scooter badly damaged and suffering the ill effects of abuse and neglect of proper maintenance and care. The plastic housing containing the throttle and clutch cables exhibited numerous cracks and breaks. Corrosion in these areas indicated a lack of proper lubrication which tends to impair operation of these control devices and cause them to jam and malfunction by sticking within their housings. The engine was covered with oil and was loosely bolted to the frame mounting. The stand and throttle grip mounted on the right handlebar was disconnected and replaced with a push-pull, choke type throttle mounted at the center of the handlebars. It was not the original throttle which came with the scooter; neither was it a recommended type of control. Although the front and rear brakes were in good operating condition, the control cables were out of adjustment. The rear wheel brake cable or rod was so far out of adjustment, it would not lock the wheel in any position. *235 The front wheel brake would lock the wheel if depressed to the maximum extent. The hand operated clutch lever which should have been on the left handlebar was missing. The clutch itself was operable and would disengage the engine from the drive wheel by pulling on the clutch cable.
Pictures taken of the scooter on December 7, 1970, by Dale Martin, an adjuster in the employ of Allstate, were offered in support of Sears' motion for summary judgment. They show the choke device mounted as above described, and the general condition of the vehicle to be substantially as related by Williams.
It is well settled that the primary purpose of summary judgment procedure is to minimize and discourage the judicial urging of well pleaded but factually frivolous claims. Perry v. Reliance Insurance Co. of Philadelphia, La.App., 157 So.2d 903.
Summary judgment shall lie where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to a material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
When a motion for summary judgment is made and supported by affidavits, answers to interrogatories and admissions of record, the adverse party may not rest on the mere allegations or denials contained in his pleadings but must, by affidavit or otherwise, counter movant's offerings and show specific facts which establish a dispute as to a genuine issue which must be resolved by trial. If the adverse party does not so respond, summary judgment shall be rendered against him, if appropriate. LSA-C.C.P. art. 967.
On trial of a motion for summary judgment, the burden of proof initially rests upon movant to show convincingly, either by affidavits, depositions or other admissible proof, that there is an absence of a genuine issue of material fact between the litigants. All reasonable doubt as to the discharge of said onus shall be resolved against movant and in favor of trial on the merits. Until movant discharges this burden, the obligation of countering by the adverse party does not arise. Once movant has discharged said burden, however, movant's adversary must show by admissible evidence that a genuine issue of material fact does exist. Perry, above; Latter & Blum, Inc. v. Von Ruekfrang, La.App., 249 So.2d 229.
Mere belief by a trial court that a litigant is unlikely to prevail on the merits, is not sufficient cause to sustain a motion for summary judgment if a genuine dispute exists between the parties as to a material issue of fact. Banes v. Prinz, La. App., 185 So.2d 50.
The material facts involved herein are the alleged jamming of the throttle in an open position and failure of the clutch to disengage the engine.
A manufacturer's liability for injuries caused by a defective product is stated in Weber v. Fidelity & Casualty Insurance Co. of N. Y., 259 La. 599, 250 So.2d 754, as follows:
"A manufacturer of a product which involves a risk of injury to the user is liable to any person, ... who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect."
As regards the throttle in question, the affidavits and depositions of movant clearly show that the throttle mechanism on the scooter at the time of the accident was not the one manufactured by movant. It was a completely foreign device. These *236 facts are uncontroverted by appellants. Under the circumstances, movant cannot be legally charged with responsibility for any defect with respect thereto.
Concerning the clutch, appellants contend the initial burden rests upon movant to show that the clutch was not defective, and more particularly, that the integrity of the clutch, as originally manufactured by movant, had been disturbed. Appellants further contend that such a showing could not be made by movant until the clutch is disassembled and inspected. Appellants further contend that since movant has not made such an inspection of the clutch and shown it to be free of manufacturer's flaws, no duty devolved upon appellants to establish defects. We disagree with this position.
We find that for purposes of its motion for summary judgment, movant has satisfactorily shown that the clutch was free of defect in design, composition or manufacture when it left movant's possession and was placed on the market. The affidavits and depositions offered by movant demonstrate that when incorporated in the original vehicle (the red and blue bike), the clutch functioned properly so far as is known. It further appears that when Gene Free, who was not the original owner, traded the bike to young Landry in 1969 (when the vehicle was then about four years old), the clutch was in good operating order. When the engineer, Williams, examined the scooter after the accident, the clutch was found to be operating properly and would disengage the engine when the clutch cable was manually operated, despite the damages to the scooter resulting from the collision. It also appears from Dean Landry's deposition that the difficulty he experienced with the clutch did not result from a defect in the clutch itself, but rather in the adjustment of its control cable which Landry had attempted to readjust on the day of the accident. The affidavits and depositions offered by movant show that the clutch in question operated satisfactorily for several years prior to the accident. It behooved appellants to counter this showing by affidavit or deposition indicating some factual basis for appellants' claims that the clutch failed to disengage due to a defect in design, composition or manufacture. Having neglected to do so, appellants must suffer the dismissal of their demand for failure to show a genuine dispute as to a material issue of fact.
The judgment of the trial court rejecting the third party demands of appellants, E. A. Caldwell, Inc., Robert Crooms and The Continental Insurance Company, against third party defendant, Sears, Roebuck & Company, is affirmed at appellants' cost.
Affirmed.