314 So.2d 511 (1975)
I. I. ROSEN
v.
CAPITAL CITY PRESS.
No. 10255.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
Rehearing Denied June 30, 1975.
*512 Jack Peebles, New Orleans, for plaintiff-appellant.
Taylor, Porter, Brooks & Phillips, Frank M. Coates, Jr., Baton Rouge, for defendant-appellee.
Before SARTAIN, ELLIS and BARNETTE, JJ.
BARNETTE, Judge.
Dr. Isadore I. Rosen, plaintiff-appellant, is a practicing physician in Amite, Louisiana. On May 28, 1974, the Grand Jury of Tangipahoa Parish returned true bills against Dr. Rosen for alleged unlawful distribution of biphetamine and obedrin.
On May 29th, the following account was published in the Baton Rouge Morning Advocate. The caption headlining the news item was as follows:
"Amite Doctor Indicted On 5 Narcotics Counts"
The body of the article read as follows:
"Amite-The Tangipahoa Parish Grand Jury Tuesday indicted Amite physician I. I. Rosen on five counts of illegal distribution of narcotics.
"Dr. Rosen, a figure in the court battle against a Louisiana anti-abortion law, was indicted on three counts of distribution of biphetamine and two counts of distribution of obedrin. The charges involved alleged purchases of drugs from Dr. Rosen by two federal agents in 1972.
"Judge Gordon E. (Buddy) Causey of 21st Judicial District Court set bond at $10,000 on each of the five counts. Dr. Rosen was arrested at his office here Tuesday afternoon and was placed in the parish jail.
"The indictments were returned after the grand jury heard testimony from a number of witnesses, including parish sheriff's deputies, agents of the Federal Bureau of Narcotics and Dangerous Drugs, state police narcotics agents and local citizens.
"The grand jury hearing was brought about by a charge Dr. Rosen made against Deputy Sheriff Walter Reed. Rosen accused Reed of criminal defamation of character when the deputy, after making a speech to the Amite Rotary Club last Nov. 20, answered a Rotarian's question about who was involved in drug traffic in the Amite area.
"The grand jury cleared Reed of the defamation charge Tuesday.
"Sheriff Frank M. Edwards, Jr. said he was pleased with the outcome of the hearing. He said his office and federal agents have been investigating Dr. Rosen's *513 activities since 1968. Edwards said narcotics charges against medical doctors are difficult to prove since physicians are licensed to dispense drugs whenever in their opinion the physical condition of the patient warrants their use."
The Morning Advocate, a newspaper with circulation throughout the Baton Rouge area, which embraces Amite City and Tangipahoa Parish, is owned and published by Capital City Press, the defendant-appellee.
It is Dr. Rosen's allegation that the news item is defamatory in that it exposes him to "disrepute and ridicule and lowers him in the opinion of his colleagues, patients, the courts and the general public." The petitioner's basic contention is that the drugs he was alleged by the Grand Jury to have illegally distributed are central nervous system stimulants and are the very opposite of narcotics. Counsel for plaintiff argues in his brief that "the public accepted the relatively wide distribution of these drugs but looked upon a distributor of narcotics with loathing." For these reasons, suit was brought seeking damages for humiliation and mental suffering, injury to personal and professional reputation, and for injury to the acquisition of patients and the loss of public confidence.
The defendant-appellee filed motion for a summary judgment, admitting publication of the news article in question but pleading that: 1) the article was true or substantially so, 2) a conditional privilege on reporting the contents of official public records, and 3) protection under the First Amendment of the United States Constitution as set forth in the case of New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).
The trial court sustained the motion for summary judgment. In its written reasons for judgment, the court takes note of the chemical difference between "amphetamines" and "narcotics," but goes on to say that when viewed in respect to the average reader, the article "does indeed appear to be substantially true."[1] Thus, finding that there is no genuine issue as to material fact, the trial court dismissed the plaintiff's suit. The plaintiff has now taken this appeal.
The criteria for the use of the summary judgment procedure as authorized by LSA-C.C.P. art. 966 is now so well defined in our jurisprudence that it requires no lengthy discussion nor long list of pertinent cases. It was never intended to be used as a means to circumvent trial of genuine issues even though it might appear to the court that the pleadings are frivolous and the party so pleading has little or no prospect of prevailing after trial. The denial of a pleader of his day in court should be applied with caution in the interest of fairness and due process.
"If the pleadings, supporting affidavits, depositions, and exhibits submitted in connection with the motion for summary judgment reveal that there exists no genuine issue of material fact, a summary judgment should be granted as a matter of law. Stated conversely, it should be denied if there is (1) a genuine issue of fact and (2) it is material to the case. The party making the motion carries the burden of proof." Brown v. B & G Crane Service, Inc., 172 So.2d 708, at p. 710 (La.App. 4th Cir. 1965).
The foregoing guidelines have been variously expressed and applied in numerous cases. We cite only a few of the later ones. Magie v. Patio Motel, Inc., 301 So. *514 2d 381 (La.App. 4th Cir. 1974); Ferina v. Howard, 285 So.2d 805 (La.App. 3d Cir. 1973); Landry v. E. A. Caldwell, Inc., 280 So.2d 231 (La.App. 1st Cir. 1973); Metoyer v. Aetna Insurance Company, 278 So.2d 847 (La.App. 3d Cir. 1973); Bodcaw Company v. Enterkin, 273 So.2d 325 (La.App. 3d Cir. 1973).
The defendant, mover for summary judgment, carries the burden of proof that it is entitled to judgment as a matter of law on the pleadings, affidavits and exhibits submitted in support of its motion. The supporting instruments are, 1) the affidavit of the news reporter stating how he obtained the information which was reported in the news item; 2) his memoranda of information from his informer; 3) certified copies of the bills of information against Dr. Rosen; 4) certified copy of the Grand Jury report; 5) extract of minutes of the court relative to Dr. Rosen's arraignment on the charges.
We will address ourselves first to defendant's contention that the news item is true or substantially true.
The distinction between "narcotic" drugs, that is, those which induce narcosis or drowsiness and those which are classified as central nervous system stimulants is not disputed and there is no genuine issue of fact on this question requiring further proof. As a matter of fact the State Legislature in the enactment of Revised Statutes, Title 40, gave Part X of Chapter 4 the title: "NARCOTICS" under which was "Sub-Part AUniform Narcotic Drug Law." See LSA-R.S. Title 40 (Volume 23 at pp. 382 and 384). The title of this Part was changed by Act 634 of 1972 to "UNIFORM CONTROLLED DANGEROUS SUBSTANCES LAW" to incorporate all the Sub-Parts under a single title. Under this title the act defines and distinguishes the controlled substances [drugs] including The issue, namely whether the news item is true or substantially true should be not confused with a question of scientific distinction between narcotics and nerve stimulant drugs. The truth or falsity of the news item, of which plaintiff complains, can be determined, as a matter of law from the pleadings and supporting exhibits. There is no genuine issue of material fact pertinent to this question.
In his Reasons for Judgment, the trial judge said:
"* * *
"The plaintiff herein complains only of the published use of the word `narcotics' in connection with his indictment. He does not take issue with the remaining content of the article. The article states with specificity the exact names of the substances for the alleged distribution of which the plaintiff was formally indicted, to-wit, biphetamine and obedrin.
"Chapter 4 of Title 40 of the Louisiana Revised Statutes deals with `Food and Drugs'. Part X thereof treats the broad subject matter of `Narcotics'. It is cited as the Uniform Controlled Dangerous Substances Law. Thereunder, a myriad of substances are categorized. Section 971 makes it unlawful to distribute or dispense a controlled dangerous substance. The plaintiff was indicted for violation of R.S. 40:971, as amended. Controlled Dangerous Substance is defined (Section 961) as `a drug, substance or immediate precursor in Schedule I through V of R.S. 40:964.' Broad Classifications of dangerous substances for which definitions are given include depressants, stimulants, LSD, marijuana, narcotics, and opiates. A `stimulant' is defined as a drug which contains a quantity of amphetamine or any of its optical isomers or any substance which is found to be habit forming because of its stimulant effect on the central nervous system. Narcotic drugs include opium, *515 coca leaves and opiates. The complexity and multitudinous nature of the dangerous substances covered by the law defies understanding of all but a scientist or expert in the field. We agree with defendant that in common parlance, the word `narcotic' has become merely a general term for illegal drugs and the ordinary person on the street does not make a distinction between an illegal drug which induces narcosis or drowsiness and a drug which stimulates. We think it significant that all of the controlled dangerous substances are dealt with in a separate part of the law under the heading `Narcotics'. If our lawmakers are thus content to deal generally with the subject matter, one can hardly expect the public to make a distinction. * * *" (Emphasis added)
Appellant vigorously contends that he is entitled to his day in Court to introduce testimony to the effect that there is a difference in the public's mind between amphetamines and narcotics. He complains that while the trial judge did not admittedly or specifically "take judicial notice of the common parlance" with reference to narcotics, in effect that seems to be the basis of his judgment. He complains that the judge's opinion on this question comes from his personal experience and is not based upon any evidence before the court. He insists upon his right to offer evidence on this point.
What the public reaction is to a published report that an individual has been "indicted on narcotics counts" as distinguished from a more technically correct publication that he was "indicted for illegal distribution of controlled dangerous drugs" is in reality what Dr. Rosen argues is a fact question, which can only be determined after taking evidence and hearing testimony.
This, we agree is a question, but whether it is a question of fact or a question of law it is not a material issue and it would serve no useful purpose for the Court to conduct a public opinion poll. In view of the Legislature's treatment of the subject of controlled dangerous substances [drugs] under the general heading of "NARCOTICS" we find as a matter of law the published report of Dr. Rosen's indictment to be substantially true.
We think it is significant that the specific charge upon which appellant was indicted, was the alleged violation of R.S. 40:971, which relates to distribution or dispensation of any of the controlled substances enumerated, which includes narcotics and central nervous system stimulant drugs.
LSA-R.S. Title 40, on the general subject "Public Health and Safety" is broken down into chapters, including Chapter 4 on "Food and Drugs" which is further broken down into parts, including originally "Part XNARCOTICS." Under this general title the "Uniform Narcotic Drug Law" was adopted as "Sub-Part A." In 1972 by Act 634, Sub-Parts A, B,[2] C,[3] D[4] and E[5] were amended and reenacted under the title "UNIFORM CONTROLLED DANGEROUS SUBSTANCES LAW," which now embraces regulations for control of numerous specific drugs and substances, including narcotic and central nervous system stimulant drugs. Therefore we find as did the trial judge that the published news item concerning appellant's indictment was substantially true.
The news item, both in the headline and in its body, uses the word "narcotics," but the body of the article wherein the appellant *516 is identified, correctly identifies the specific drugs, namely biphetamine and obedrin, the illegal distribution of which Dr. Rosen was charged.
It is more probable than not that only the technically educated person is capable of making the distinction between these named drugs and narcotic drugs and that the average reader in the public could not do so, but this is of no material significance since the news item taken as a whole is substantially true as shown by the exhibits filed in support of the motion for summary judgment, and the content of the statute under which he was charged.
Truth or substantial truth is a defense. Thompson v. St. Amant, 250 La. 405, 196 So.2d 255 (1967), reversed on other grounds, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262; Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222 (1960); Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958); Kennedy v. Item Co., 197 La. 1050, 3 So.2d 175 (1941); Miller, Smith and Champagne v. Capital City Press, 142 So.2d 462 (La.App. 1st Cir. 1962). It is therefore immaterial that the average reader in the public might not have been able to make the technical distinction.
Having come to this conclusion it is not necessary to consider the two remaining defenses pleaded by defendant, namely, conditional privilege and constitutional protection under the First Amendment to the United States Constitution. The trial judge, in his written reasons for judgment discussed these two questions at some length, but under the rationale of this opinion, it is not necessary that we discuss them.
We find no genuine issue of material fact and the judgment sustaining the motion for summary judgment and dismissing plaintiff's suit is correct.
The judgment appealed is affirmed at appellant's cost.
Affirmed.
NOTES
[1] As to defendant's contention numbers 2 and 3, the trial judge found that there was no conditional privilege since the Sheriff's news release was not a public record and that liability is not barred as a matter of constitutional law under New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, since the plaintiff is a private individual and since the defendant was at least slightly negligent.
[2] "SUB-PART BMISCELLANEOUS"
[3] "SUB-PART CBENZEDRINE"
[4] "SUB-PART DBARBITURATE AND CENTRL NERVOUS SYSTEM STIMULANT LAW"
[5] "SUB-PART ELOUISIANA NARCOTIC AND REHABILITATION COMMISSION"