375 So.2d 125 (1979)
J. W. SLOCUM, Jr., Plaintiff-Appellant,
v.
Tom WEBB et. al., Defendants-Appellees.
No. 6874.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1979.
Writ Refused September 28, 1979.
*126 Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, for plaintiff-appellant.
Gravel, Roy & Burnes, Camille F. Gravel, Jr., Alexandria, for defendant-appellee.
Before DOMENGEAUX, GUIDRY, CUTRER, STOKER and DOUCET, JJ.
GUIDRY, Judge.
This is an appeal from a summary judgment dismissing plaintiff's defamation suit against Tom Webb, news director for KALB-T.V., and Lanford Telecasting Company, Inc., owner of that television station. The action arose as the result of a news broadcast televised by KALB-T.V. in Alexandria, Louisiana, on December 9, 1977. In the course of this broadcast it was reported that a "Jerry Slocum, Jr." had been charged by police with keeping a disorderly house. Jerry Slocum Jr. subsequently instituted suit against defendants, alleging that he had not been charged with such crime, and that as a result of the erroneous broadcast, his personal and professional reputation had been damaged. Defendants filed a motion for summary judgment, asserting that the news report was based upon information obtained from sources and records within the Alexandria Police Department, and the story as broadcast was "true". Along with this motion was filed a reconventional demand seeking reasonable attorney's fees pursuant to LSA-C.C. Article 2315.1B.[1] In support of their motion for summary judgment, defendants submitted a copy of an arrest report bearing the name "Jerry Slocum, Jr.", and an affidavit by Naomi Geltner, the reporter who had written the disputed news story, stating that she had relied upon this arrest report in preparing the story for broadcast. Various other documentary evidence was submitted by both *127 parties for the court's consideration of the motion for summary judgment. Although it is undisputed that the above mentioned arrest report was made out in error, in that the plaintiff was not among those arrested, the trial court found that there existed no genuine issue of fact material to a finding that the defendants were entitled to judgment as a matter of law. In its written reasons for judgment the trial court stated:
". . . The jurisprudence indicates that the news media can reasonably rely on information obtained from law enforcement agencies, where there is no reason to doubt the correctness and authenticity of the information received. Wilson v. Capital City Press 315 So.2d 393 (La.App. 3d Cir. 1975), writ refused La., 320 So.2d 203; LeBoeuf v. Times Picauyne (sic) Publishing Corporation 327 So.2d 430 (La.App. 4th Cir. 1976).

The affidavit of reporter Naomi Geltner establishes that she relied upon information furnished to her by Acting Police Chief Charles Ezernack and on information obtained from an arrest report. She had no reason to believe that the report was not accurate.

Furthermore, what the defendants reported was true; the arrest report did charge a `Jerry Slocum, Jr.' with keeping a disorderly house. There is no genuine issue of the (sic) material fact pertinent to this question. As a matter of law, the content of the news item was substantial (sic) true as shown by the exhibits filed in support of the motion for summary judgment. It is well settled that truth or substantial truth is a defense to a defamation suit. Rosen v. Capitol City Press 314 So.2d 511 (La.App. 1st Cir. 1975). . . ."
The court rejected defendants' reconventional demand for reasonable attorney's fees. Plaintiff appealed. Defendants have answered this appeal, seeking to have the trial court judgment reversed insofar as it dismissed their reconventional demand, and further seeking damages for frivolous appeal.
The facts giving rise to the instant suit may be summarized as follows: On December 5, 1977, Sergeant Foster Lee, along with another officer on the Alexandria police force arrested several persons for gambling at the Ackel-Slocum used car lot in Alexandria. One of the persons arrested was A. J. Slocum, also known in the community as "Jerry" Slocum. A. J. Slocum is the son of the plaintiff, Jerry Slocum, Jr. The arrest gained local attention when complaints of racial discrimination surrounding the arrest and subsequent demotion of Sergeant Lee were made by the local president of the National Association for the Advancement of Colored People. Tom Webb, news director for KALB-T.V., became aware of the controversy and assigned the story to reporter Naomi Geltner, directing her to investigate the facts surrounding the arrest. Naomi Geltner, along with reporter Kathy Johnson, investigated the story and prepared a news report that was read by Tom Webb on the air on December 9, 1977. Contained in that report was the following statement, alleged by plaintiff to have been defamatory:
"Jerry Slocum, Jr., has been charged with keeping a disorderly house."
This statement became the object of plaintiff's action.
In Wilson v. Capital City Press, 315 So.2d 393 (La.App. 3rd Cir. 1975), writs refused, La., 320 So.2d 203, we stated:

"In Louisiana defamation is a quasi offense and as such is governed by Louisiana Civil Code Article 2315. Wisemore v. First National Life Insurance Company. 190 La. 1011, 183 So. 247 (1938); Vicknair v. Daily States Pub. Co., 153 La. 677, 96 So. 529 (1923). In order for defamatory words to be actionable in Louisiana proof of the following elements are necessary:

1. Publication, that is, communication to some person other than the one defamed;
2. Falsity;
3. Malice, actual or implied; and
4. Resulting injury.
Rougeau v. Firestone Tire and Rubber Company, 274 So.2d 454 (La.App. 3rd Cir. *128 1973); Sas Taworsky (Jaworsky) v. Padfield, 211 So.2d 122 (La.App. 3rd Cir. 1968); Comment 28 La.L.Rev. 82 (1967)."
Defendants contend that they are entitled to judgment as a matter of law because the undisputed facts establish that: (1) the broadcast was not false (as there was an arrest report erroneously bearing plaintiff's name), and/or (2) the broadcast was not made with actual or implied malice, as defendants had reasonably relied upon information obtained from police records and from interviews with the arresting officer and his superior. Clearly, if there exists no genuine issue of fact material to a finding favorable to defendants on either contention, they are entitled to judgment as a matter of law. LSA-C.C.P. Article 966;[2]Wilson v. Capital City Press, supra.
I. DID THE TRIAL COURT ERR IN ITS DETERMINATION THAT THERE EXISTS NO GENUINE ISSUE OF FACT MATERIAL TO A CONCLUSION THAT THE ALLEGED DEFAMATORY STATEMENT WAS SUBSTANTIALLY TRUE?
The trial court found that the statement "Jerry Slocum, Jr. has been charged with keeping a disorderly house" was "substantially true" based upon the existence of an arrest report signed by the arresting officer which erroneously designated the arrested person as "Jerry Slocum, Jr.". As there was no dispute that the arrest report did bear the plaintiff's name, the trial judge concluded, on the basis of the case of Rosen v. Capital City Press, 314 So.2d 511 (La. App. 1st Cir. 1975), that defendants were entitled to judgment as a matter of law, based upon the well settled rule that truth, or substantial truth, is a defense to a defamation suit. We find the trial court's reliance upon this case to be misplaced. In Rosen, Dr. Isadore I. Rosen had been indicted for the alleged unlawful distribution of biphetamine and obedrin. Following this indictment, the Morning Advocate published an account of the incident. The caption headlining the news items was as follows:
"Amite Doctor Indicted On 5 Narcotics Counts "
The body of the article read as follows:
"AmiteThe Tangipahoa Parish Grand Jury Tuesday indicted Amite physician I. I. Rosen on five counts of illegal distribution of narcotics.

"Dr. Rosen, a figure in the court battle against a Louisiana anti-abortion law, was indicted on three counts of distribution of biphetamine and two counts of distribution of obedrin. The charges involved alleged purchases of drugs from Dr. Rosen by two federal agents in 1972.. . ."
Plaintiff contended that the news story was false, as biphetamine and obedrin were not in fact "narcotics" as stated in the article. The court, however, found that as a matter of law the published report of plaintiff's indictment was substantially true. In so finding, the court stated:
"The news item, both in the headline and in its body, uses the word `narcotics,' but the body of the article wherein the appellant is identified, correctly identifies the specific drugs, namely biphetamine and obedrin, the illegal distribution of which Dr. Rosen was charged.

It is more probable than not that only the technically educated person is capable of making the distinction between these named drugs and narcotic drugs and that *129 the average reader in the public could not do so, but this is of no material significance since the news item taken as a whole is substantially true as shown by the exhibits filed in support of the motion for summary judgment, and the content of the statute under which he was charged.

Truth or substantial truth is a defense. Thompson v. St. Amant, 250 La. 405, 196 So.2d 255 (1967), reversed on other grounds, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262; Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222 (1960); Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958); Kennedy v. Item Co., 197 La. 1050, 3 So.2d 175 (1941); Miller, Smith and Champagne v. Capital City Press, 142 So.2d 462 (La.App. 1st Cir. 1962). It is therefore immaterial that the average reader in the public might not have been able to make the technical distinction." at pp. 515-16

While we find the above reasoning to be sound, we nevertheless find it to be inapplicable to the instant facts. In Rosen, the plaintiff had been indicted for distributing drugs, and the names of the actual drugs which he had been indicted for distributing were enumerated in the article. They were simply referred to as "narcotics" rather than "stimulants". The factual situation herein presented might best be distinguished by the following example: If the plaintiff, Jerry Slocum, Jr., had in fact been arrested for keeping a disorderly house, but had never been formally "charged" with the crime, then the reasoning set forth in Rosen could be applied to determine if the broadcast taken as a whole conveyed the substantial truth of the story. Likewise if the nature of the charges leveled at plaintiff had been erroneously reported, an inquiry into whether the broadcast was substantially true would be relevant. However, in the instant case, it is undisputed that the plaintiff was not involved in the reported incident in any way. The inaccuracy of the reported statement related to the identity of the persons involved in the incident, not to the nature or extent of their involvement therein. It was "A. J. Slocum" who was arrested for operating a disorderly house. And while A. J. Slocum was known in the community as "Jerry", there is no dispute that A. J. "Jerry" Slocum and Jerry Slocum, Jr. are two separate individuals. There is simply no truth or substantial truth to the statement that "Jerry Slocum, Jr. has been charged with keeping a disorderly house."
We find that the existence of a police arrest report erroneously made out in the name of Jerry Slocum, Jr. does not bear upon the question of whether the content of the news report was false, true or substantially true. Rather, the existence of this report would bear upon the question of whether the defendants communicated the false statement under a reasonable belief that it was true. The falsity of the alleged defamatory statement, and the express or implied malice of the one making the statement are two separate elements of a defamation action. As broadcast, the reported statement that Jerry Slocum, Jr. had been charged with operating a disorderly house was completely false. Consequently we find that as a matter of law the trial court erred in its determination that there exists no genuine issue of fact material to a conclusion that the alleged defamatory statement was true or substantially true.
II. IS THERE A GENUINE ISSUE OF MATERIAL FACT RELATIVE TO THE ALLEGED ACTUAL/IMPLIED MALICE OF DEFENDANTS?
Presumably the trial court concluded that the evidence submitted in support of defendants' motion for summary judgment was such that there existed no genuine issue of fact material to a finding that defendants were not at fault in reporting the erroneous statement. We disagree. Although an allegedly defamatory statement is found to be false, a summary dismissal of the action is nevertheless proper when the defendant establishes that there exists no genuine issue of material fact regarding the allegation that it communicated the false statement without malice, actual or implied. It is undisputed that *130 Jerry Slocum, Jr. is not a public figure. Consequently, under the mandate of Gertz v. Robert Welsh, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the defendants herein are liable for the false report only if some fault on their part can be shown. Wilson v. Capital City Press, supra. At the minimum, the plaintiff would have to show that the defendants had some knowledge that should have placed them on their guard, and made them aware that further research was necessary to insure the accuracy of their report. Gertz v. Robert Welsh, Inc., supra; LeBoeuf v. Times Picayune Publishing Corporation, 327 So.2d 430 (La.App. 4th Cir. 1976).
At the very heart of the issue of defendants' fault lies the question of what sources of information defendants' reporters actually came in contact with prior to the broadcast and what information such sources revealed to them. Likewise, it is relevant to determine whether defendants' reporters should have been more thorough in their investigation. The basis of plaintiff's claim rests upon an assertion that while she was investigating this story, Naomi Geltner uncovered conflicting facts which should have put her on guard. In support of their motion for summary judgment, defendants submitted various documents, among which were the affidavits of Tom Webb, Naomi Geltner and Kathy Johnson; the notes taken by Naomi Geltner in the course of her investigation; and, the arrest reports of those arrested during the reported incident. In substance, Tom Webb's affidavit indicates that he did not know the plaintiff personally, that he assigned Naomi Geltner to investigate the disputed story, and that he subsequently questioned the reporter several times to assure that her investigation had been properly conducted. The affidavit of Naomi Geltner indicates that in the course of her investigation of the story, she first contacted the arresting officer, and was given the name "Jerry Slocum" as one of the persons arrested. She stated that thereafter she went to the Alexandria police station with reporter Kathy Johnson and interviewed the acting Chief of Police, Charles Ezernack. She states that during the interview, the Police Chief ". . . referred to a stack of reports upon his desk, (and) represented that the name of one of the persons so arrested was `Jerry Slocum, Jr.' . . .". She further stated that the Police Chief then referred her to the jail book of the Alexandria City Jail, where she found the other names of the people arrested. Ms. Geltner later amended her affidavit to further indicate that she personally saw the arrest report bearing the name of Jerry Slocum, Jr. Reporter Kathy Johnson's affidavit states that she was present when the police chief stated that one of the persons arrested was Jerry Slocum, Jr. while ". . . referring to a stack of reports on his desk . . .". The notes taken by Naomi Geltner in the course of her investigation contain inconsistent references to both a Jerry Slocum and a Jerry Slocum, Jr.
Among the evidence submitted by plaintiff in opposition to the motion for summary judgment were the affidavits of the Chief of Police, Charles Ezernack, and the Superintendent of Records of the Alexandria Police Department, Louis J. Guillot; and a copy of the Alexandria city jail book. The affidavit of Charles Ezernack reveals that on December 9, 1977 Naomi Geltner and Kathy Johnson came to his office at the Alexandria police station to discuss the arrests of December 5, 1977. He states that he did indicate that the arrest reports were on his desk at the time of the interview with the reporters, but he states that he did not show the reports to the reporters and that to the best of his knowledge neither reporter viewed any of the arrest reports. He states that he ". . . referred the reporters to the jail book located on the second floor of the police department to obtain the names of the persons arrested. . .". The affidavit of Louis J. Guillot likewise indicates that the arrest reports, which were assigned to his custody, were not released to the defendants' reporters to the best of his recollection, and were not a matter of public record. We find serious discrepancies in several material allegations made in the affidavits submitted by both *131 parties on the motion for summary judgment. Defendants' reporters contend that the erroneous information they received relating to the disputed news story came from Police Chief Ezernack and the incorrectly prepared arrest report. The Police Chief states, however, that he sent the reporters to the jail book to get the names of those who were arrested, and that he did not allow the reporters to view the arrest reports. The jail book, it should be noted, listed the person arrested as "Jerry Slocum".
Summary proceedings are not intended to be used as a means to circumvent the trial of genuine and material issues. The mover for a summary judgment carries the burden of proof that he is entitled to judgment as a matter of law, based upon the pleadings, affidavits and exhibits submitted in support of his motion. As we find that there are genuine issues of material fact relative to the defendants' alleged fault in preparing the false news report, we conclude that the action was not properly disposed of on a motion for summary judgment.
In light of our reversal of the trial court judgment on the motion for summary judgment, the trial court's dismissal of defendants' reconventional demand for attorney's fees is premature and therefore that portion of the lower court's judgment must also be reversed and reconsidered on remand.
For the above and foregoing reasons, we reverse the judgment of the trial court and remand this case to the trial court for trial on the merits consistent with the views herein expressed. All costs of these proceedings are to be paid by defendants-appellees.
REVERSED AND REMANDED.
STOKER, J., dissented and filed opinion.
STOKER, Judge, dissenting.
I respectfully dissent from the majority holding in this case. I would affirm the trial court's judgment granting the motion for summary judgment.
As may be gleaned from the statement of facts set forth in the majority opinion, there is no dispute as to the facts material to the issue brought up by plaintiff's motion for summary judgment. My position and that of the majority differ only on the question of what is meant by the word "charged" in the news report given in the news broadcast televised by KALB-T.V.
Undisputed Fact No. 1:
In connection with the various arrests made by Sgt. Foster Lee of the Alexandria Police Department, he arrested one Jerry Slocum (A. J. Slocum). Sgt. Lee filled out a "Report of Arrest" on a printed form furnished by the Alexandria Police Department, commonly referred to as an arrest report. The form has certain blocks or spaces to cover personal data and other matters such as date and time of the arrest and identifying information concerning the arrested person. In the block calling for the name Sgt. Lee wrote the name "Jerry Slocum, Jr." In the block bearing the printed words, "PLACE ARRESTED," Sgt. Lee wrote in the words "Ackel Slocum Car Lot, 1816 Lee Street." In the next block bearing the printed word, "CHARGE," Sgt. Lee wrote in the words, "Operating a disorderly house."
In the blank spaces provided for a narrative by the arresting officer headed "FACTS OF ARREST" Sgt. Lee wrote in the following narrative:
On the 12-5-77 around the hours of 11:00 P.M., while on patrolling, I saw a number of subjects in Ackel Slocum Car lot at 1816 Lee Street. Upon checking the building out we found Gambling going on and made arrests on such. Jerry Slocum, Jr. is part owner of the building and was present at the game so he was also arrested for operating a disorderly house along with the charge of Gambling. All subjects were paroled for court on the 20th of Dec. 1977.
Undisputed Fact No. 2
Sgt. Foster Lee was in error in listing the person he arrested in the arrest report described above as "Jerry Slocum, Jr." Jerry Slocum, Jr. (J. W. Slocum, Jr.) is the father *132 of A. J. Slocum, who to complicate matters, is also known as "Jerry Slocum." Sgt. Lee signed the arrest report and filed it with his superiors at the Alexandria Police Department.
Undisputed Fact No. 3
After investigating the incident the T.V. station broadcast its report concerning the arrest of some eleven individuals. Then the following statement was given in the report:
"Jerry Slocum, Jr. has been charged with keeping a disorderly house."
Defendants-appellees defended this defamation action on the ground that the statement was true. The trial judge agreed and so do I. The verb of the sentence is "has been charged," and not that Jerry Slocum, Jr. did in fact keep a disorderly house. As I understand the majority's reasoning, it is founded upon two assertions: (1) first, that irrespective of how the report was made out (even if an arrest report constitutes a charge) the erroneous report does not mean that the father has been charged because it actually was meant to refer to a totally different person, the son, and (2) A charge is a matter defined and governed by criminal laws and can only be accomplished through a grand jury indictment, the filing of a bill of information by the district attorney or the filing of an affidavit.[1]
I respectfully disagree with the restrictive meaning which the majority gives to the word "charge". In a context such as presented by this case, the word "charge" carries the meaning which the man in the street gives it. Surely, the friends of Mr. Jerry Slocum, Jr. and the public generally understood from the use of the word that he had been officially accused of the crime of keeping a disorderly house and prosecution would follow. Standard dictionary definitions of the word "charge" contain definitions to that effect, for example: "to assert as an accusation". That words in the setting of defamation suits are given their common meaning, rather than technical legal meanings, is well illustrated by the very case discussed at length by the majority opinion, Rosen v. Capital City Press, 314 So.2d 511 (La.App. 1st Cir. 1975). See also Hopkins v. Keith, 348 So.2d 999 (La.App. 2nd Cir. 1977).
The more subtle postulate of the majority is the assertion that, even if it be assumed for the sake of argument that the making out and filing of the arrest report may be properly considered a charge, the erroneous use of plaintiff's name in the report does constitute a charge against him. This is illusory and unrealistic. It is true that the person actually arrested and to whom the report was intended to refer to was the physical person of the son of plaintiff and not plaintiff. However, when a police officer, acting in his capacity as such, makes an arrest report in a person's name, albeit in error, and files it, persons who see it or know of it are entitled to believe it means what it says. Until corrected, or suppressed, it is difficult to maintain that the person named in the report is not truly the person to whom the report is supposed to apply. Hence, in my opinion, when the T.V. station reporter stated in his news broadcast that "Jerry Slocum, Jr. has been charged with keeping a disorderly house," he simply reported exactly what the arrest report said. As I see it, the T.V. station reported correctly what the police (in the arrest report at least) had actually done. Therefore, I regard the broadcast as true. It truly reported what Sgt. Lee had done although he did it in error.
Sgt. Foster Lee is the party who wronged plaintiff. The reality of the situation is simply that the T.V. station reported a true fact. That the report was false is not material to the issue here. It was not defendants who made a false report through the news report.
In his written reasons for judgment, the trial judge observed as follows:

*133 The jurisprudence indicates that the news media can reasonably rely on information obtained from law enforcement agencies, where there is no reason to doubt the correctness and authenticity of the information received. Wilson v. Capital City Press, 315 So.2d 393 (3rd Cir. 1975), writ refused 320 So.2d 203; LeBoeuf v. Times Picauyne Publishing Corporation, 327 So.2d 430 (4th Cir. 1976).
I agree with this statement.
I would affirm the trial court.
NOTES
[1] LSA-C.C. Article 2315.1 provides:

"A. In addition to general and special damages, the plaintiff who obtains a judgment because of having been defamed, libeled, or slandered may be awarded punitive damages and reasonable attorneys fees, if it is proved that the defamatory, libelous, or slanderous statement on which the action is based was made with knowledge of its falsity or with reckless disregard of whether it was false or not.
B. Should plaintiff in any action for defamation, libel, or slander not prevail, and judgment be rendered in favor of the defendant, reasonable attorney's fees may be awarded to the defendant as an item of taxable costs if the court determines that the action was frivolous. In any such case, any retraction or correction made by defendant must be considered in mitigation of any damages to be awarded."
[2] LSA-C.C.P. Article 966 provides:

"The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
[1] As provided by the Louisiana Code of Civil Procedure, these are the three modes by which criminal proceedings against an individual may be instituted. LSA-C.Cr.P. arts. 381-386. The three modes are not defined in the Code of Criminal Procedure as "charges" but as "accusations".