299 So.2d 380 (1974)
Mary Elizabeth MECOM, wife of/and John W. Mecom, Plaintiffs and Appellants,
v.
MOBIL OIL CORPORATION et al., Defendants and Appellees.
No. 4544.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied September 4, 1974.
Writ Refused November 8, 1974.
*381 Camp, Carmouche, Palmer, Carwile, & Barsh, by A. J. Gray, III, Lake Charles, for plaintiffs-appellants.
Gordon, Arata and McCollam, by John McCollam, New Orleans, and J. B. Jones, of Jones and Jones, Cameron, Scofield, Bergstedt & Gerard, by John B. Scofield, Lake Charles, Anderson, Leithead, Scott, Boudreau & Savoy, by Richard L. Savoy, Lake Charles, for defendant-appellee.
Before FRUGE, HOOD and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is an action brought by certain landowners to partially cancel a mineral lease for alleged failure to timely make production royalty payments. Defendants filed a number of exceptions, including vagueness, non-joinder of necessary parties, no cause of action, and prematurity. They also filed a motion for summary judgment. The District Court sustained defendants' motion for summary judgment as well as the dilatory exception of prematurity but dismissed the other exceptions. Plaintiffs have prosecuted this appeal from the dismissal of their suit.
The following pertinent facts are based primarily upon sworn affidavits of two Mobil Oil Corp. (hereinafter referred to as Mobil) attorneys, Walter J. Morrison and Roy M. Talley, and extensive depositions taken by Mobil of Albert G. Reynolds and Claude W. Duke, trustee and attorney respectively for certain of plaintiffs' companies involved in bankruptcy proceedings out of which this case arose.
This action involves extremely valuable properties located in the Mud Lake Field of Cameron Parish. The lease in question was initially executed by the Lutcher and Moore Cypress Lumber Co., as lessor, to S. P. Benckenstein. Said lease was thereafter acquired from Benckenstein by Mobil Oil Corporation's predecessor, Magnolia Petroleum Co., in February, 1944. In January, 1947, production was established in paying quantities and the lease, with the exception of portions thereafter voluntarily released over the ensuing twenty-five years, has since been maintained by production royalty and delay rental payments. Immediately prior to November, 1970, fee *382 title to the lands subject to the mineral lease was owned by two limited partnerships, U. S. Oil of Louisiana, Ltd. (hereinafter referred to as USOLA-Ltd.) (2/3) and Four M. Properties, Ltd. (1/3). Due however to the existence of a production payment owned by Simec Corporation, the one-eighth (1/8) lessor's royalty was paid fifty percent (50%) to USOLA-Ltd. and fifty percent (50%) to Simec Corporation. The lessor's royalty due Simec has been continuously paid prior to and since this suit was filed. However, commencing late December, 1970, Mobil suspended payment of royalties to USOLA-Ltd.
The background and events occurring shortly before this suspension took place are important. USOLA-Ltd. was one of several separate entities controlled by the John W. Mecom family. Other Louisiana based Mecom entities were U. S. Oil of Louisiana, Inc. (hereinafter referred to as USOLA-Inc.) and Lake Washington, Inc. USOLA-Ltd. was a partnership in commendam, with USOLA-Inc. as its general partner owning two and one-half percent (2½%) of its assets and Mr. and Mrs. John W. Mecom, individually, as limited partners owing ninety-seven and one-half percent (97½%) of the assets.
Because of an accumulation of debts in excess of Seventy-Five Million Dollars ($75,000,000), owed in various proportions by several of these aforesaid entities and by the Mecoms personally, reorganization proceedings under Chapter X of the Federal Bankruptcy Laws were instituted on behalf of USOLA-Inc. and Lake Washington, Inc. in the United States District Court, Eastern District of Louisiana, New Orleans Division, on November 24, 1970. Shortly thereafter Albert G. Reynolds was appointed trustee of the debtor corporations and Claude W. Duke was employed as his attorney.
Additionally, on December 3, 1970, John and Mary Mecom instituted arrangement proceedings under Chapter XI of the Federal Bankruptcy Laws in the United States District Court, Western District of Louisiana, Lake Charles Division, placing their personal assets and debts under the control of that court. Ike Hoskins was appointed as receiver and Richard B. Sadler, Jr. as his attorney.
Upon first learning of these proceedings from local newspapers in mid-December, 1970, Mobil retained Walter J. Morrison, a Houston attorney, to represent it in these bankruptcy proceedings and to collect an amount allegedly due Mobil on certain notes signed by the debtors. At this time Lake Washington, Inc., USOLA-Inc., and John Mecom individually were indebted to Mobil on two notes aggregating One Million Five Hundred Thousand Dollars ($1,500,000) for interests purchased in the Lake Washington Field in Plaquemines Parish, Louisiana. USOLA-Ltd. in its own name was not indebted in any way to Mobil.
On November 27, 1970, U.S. District Judge Edward J. Boyle, Sr. in the reorganization proceedings of USOLA-Inc. and Lake Washington, Inc., in the Eastern District Court, entered an order prohibiting interference with the possession, management or operation of the aforesaid entities [in addition to the parent USOLA-Ltd.] by the trustee. In addition it was required that all creditors of said debtors involved file their proofs of claim in the reorganization proceedings prior to January 15, 1971.
Subsequently, on December 14, 1970, Mobil received a letter dated December 12th from R. Sadler, the attorney representing the receiver in the Western District Arrangement Proceedings, advising that the partnership USOLA-Ltd. had been dissolved by virtue of the filing of the reorganization proceedings and as a result ninety-seven and one-half percent (97½%) of all royalties formerly due to USOLA-Ltd. were to be remitted through the Western District Arrangement receiver to the estate of John and Mary Mecom, this being their proper share. On December 14th, 1970, Referee Leroy Smallenberger *383 in the Western District proceedings entered an order confirming the instructions of Sadler.
Mobil learned of the aforementioned order by Judge Boyle in late December, 1970, or early January, 1971, and a proof of claim for the aforementioned One Million, Five Hundred Thousand Dollar ($1,500,000) debt was prepared and filed in the Eastern District Proceedings. Included in said proof of claim was the following language:
"That no setoffs or counterclaims have been made to the above described indebtednesses; however, Mobil is holding in suspense certain amounts for royalties on gas attributable to interests held by U. S. Oil of Louisiana, Ltd., a limited partnership of which USOLA is the general partner, for the month of December 1970, aggregating approximately $25,000 and Mobil will be holding in suspense other and additional amounts for such royalties for January 1971, and for subsequent months, and Mobil may have or may hereafter accrue other accounts receivable from the Debtors or either of them and Mobil is claiming its right and privilege to offset all such royalties and other accounts receivable on the above described indebtednesses of the Debtors to Mobil."
Upon receipt of the proof of claim, the trustee in the Eastern District Proceedings, A. Reynolds, through his attorney C. Duke, on January 26 wrote Mobil a demand letter for all royalties theretofore withheld.
Mobil chose not to comply with either federal court order but instead filed an "Application to Permit Retention of the Funds Pending Determination of Disputed Rights" on February 10, 1971, in the Eastern District Proceedings. A hearing on the point was scheduled, but continued because of later developments.
During this period representatives of the Western District and Eastern District Proceedings, and creditors of the Mecoms and their controlled entities, were in the process of trying to work out problems concerning the administration and control of USOLA-Ltd.'s assets. As a result, on March 12, 1971, USOLA-Ltd. was placed in a separate Chapter XI Arrangement Proceeding in the Federal Eastern District Court and A. Reynolds was appointed receiver. Reynolds continued to retain C. Duke as his attorney. A few days prior thereto, Referee Smallenberger of the Western District recalled his December 14, 1970, order.
On or about March 15, 1971, the filing of the USOLA-Ltd. Arrangement Proceedings came to the attention of Mobil. Telephone discussions thereafter took place between Mobil's attorney, W. Morrison, and Duke. Morrison subsequently flew to New Orleans on March 18th where a meeting between Morrison, Duke and his associate Hantel, and Reynolds, took place. It was Morrison's testimony that he was advised at the meeting that because of the initial suspension of royalty payments by Mobil Reynolds would not accept payment of the funds without the consent of the Mecoms.
Morrison thereafter returned to his Houston office to work on an "Application Regarding Payments Into the Registry of the Court" pursuant to which he intended to deposit the suspended royalties into the Eastern District USOLA-Ltd. Arrangement Proceedings. Said funds representing royalty payments for the months of November, 1970, through February, 1971, were subsequently deposited into the registry of the court on March 29, 1971. Morrison allegedly telephoned or met with Duke and Reynolds several times prior thereto to see if the Mecoms had agreed to accept the suspended royalty payments.
On or about April 21, 1971, prior to the date that the next royalty payments were due Morrison again contacted Duke, this time offering to obtain an order from the Eastern District Court turning over the previously deposited royalties to Reynolds *384 in his capacity as receiver for USOLA-Ltd. Said offer was rejected on advice of Duke who felt that an action to cancel had accrued in favor of USOLA-Ltd.
Mobil thereafter continued to deposit the royalty payments into the court registry during the pendency of the USOLA-Ltd. Arrangement Proceedings.
Subsequently on May 12, 1971, a lease cancellation suit was filed by the Mecoms through Reynolds, as receiver for USOLA-Ltd., as an ancillary matter in USOLA-Ltd.'s Arrangement Proceedings. Mobil filed certain jurisdictional objections which were continued indefinitely pending approval of a plan of arrangement.
Subsequently a plan of arrangement was in fact consummated and executed by which the aforesaid properties subject to lease were transferred to John and Mary Mecom on August 21, 1971. Thereafter Mobil tendered all royalty payments to the Mecoms and each time they were refused.
On May 1, 1972, Reynolds in his capacity as receiver paid the aforementioned indebtedness to Mobil in full, including attorney's fees.
The Mecoms subsequently dismissed the initial cancellation suit in federal district court and filed the present lease cancellation suit on August 31, 1972, which in substantive effect is closely analogous to the first one.
The narrow issue before us is whether a summary judgment of dismissal should have been granted the defendants on the basis of the pleadings, stipulations, depositions, affidavits, and copies of documents introduced for the limited purpose of trying the motion for summary judgment.
From a reading of the record, we are not convinced that the defendants' depositions, together with the affidavits and accompanying pleadings and other documentary evidence on file, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law as required by LSA C.C.P. Art. 966.
At the very foundation of this suit is the question of whether Mobil Oil Corporation was in good faith and legally justified in the initial suspension of the royalty payments to USOLA-Ltd. Thus the basis upon which Mobil relied for suspension is a determining factor in deciding whether a breach existed.
Plaintiffs argue that Mobil's only reason for termination of royalty payments in December, 1970, was an effort to offset the aforementioned One Million, Five Hundred Thousand Dollar ($1,500,000) debt allegedly owed by Lake Washington, Inc., USOLA-Inc. and John Mecom individually against the royalty payments due USOLA-Ltd.
Defendants on the other hand argue that the decision to suspend was based on the conflict in title to the royalty payments between the Federal Eastern and Western District Courts as well as on the possible right to an offset.
Plaintiffs' contention is buttressed by the fact that the proof of claim prepared and filed by the defendants arguably indicates that the only reason for retention of the royalty funds was the right of offset. No mention is made of the apparent conflict between the Federal District Courts as to control over the royalties. On the other hand, further proceedings give support to Mobil's assertions.
Thus a genuine issue of fact exists as to what Mobil's intentions were in the initial suspension and whether said suspension was in good faith and based upon reasonable grounds.
The trial court in effect weighed the circumstances and concluded essentially (a) that Mobil suspended payments because of the controversy existing between the Federal Eastern and Western District Court proceedings as to who was entitled to administer the affairs of USOLA-Ltd.; (b) that irrespective of any right Mobil might have had to offset the royalties or to suspend payment by reason thereof, they were authorized under law and the existing division *385 orders[1] to suspend payments until satisfactory evidence of title had been furnished; (c) and finally that Mobil was so justified at least until March 15, 1971, when Reynolds was appointed as receiver for USOLA-Ltd. in its arrangement proceedings in the Eastern District Court.
The trial court further reasoned that defendants were not in active breach of the mineral lease for its failure to pay the royalties to Reynolds immediately upon his appointment of March 12, 1971, or shortly thereafter. On the question of tender, Mobil claims that as early as March 18th, in the meeting with Reynolds, Duke, and Hantel, they offered to obtain an order turning over the previously deposited royalties to Reynolds in his capacity as receiver. Duke denies in his deposition that the question was even discussed at the meeting. This conflict in testimony was clearly recognized by the trial court, yet the District Judge apparently weighed the conflicting testimony and assessed the credibility of the witnesses, concluding that Mobil's explanation of what occurred on March 18 was actually what took place.
It was further concluded that actually what was discussed at the March 18th meeting was immaterial insofar as it would have been useless to tender the royalty payments, because Reynolds, on the advice of Duke, had decided by this time that Mobil had breached the lease by its initial suspension. However, we feel it was material and relevant to indicate if a breach existed at the time and whether Mobil acted in good or bad faith. Although tender is not necessary when such is vain and useless, if one making said tender doesn't know at the time that this is the case, then whether said tender is in good faith is material. Herein the facts are not conclusive that as of March 15 Mobil knew that Reynolds would not accept payment of the royalties.
If in fact an active breach did not exist, then also material is the question of whether Mobil passively breached the lease and therefore whether it was placed in default. Plaintiffs contend Mobil was placed in default with the demand letter of Reynolds, through his attorney Duke, as far back as January 26, 1971. The trial judge concludes that Duke was not the legally authorized representative of USOLA-Ltd. at this time and was not in a position to demand payment, insofar as a conflict between federal district courts existed. Although we need make no decision at this time as to the correctness of this conclusion, we feel that, arguably, a question exists as to whether a legal demand took place. Also we might mention again that what was discussed at the March 18th meeting is also material to the question of whether Mobil was put in default at this later point in time.
Summary judgment procedure should be used both cautiously and sparingly and not as a substitute for trial. Metoyer v. Aetna Ins. Co., 278 So.2d 847 (La. App. 3rd Cir. 1973); Delta Equipment and Construction Co. v. Royal Indemnity Co., 186 So.2d 454 (La.App. 1st Cir. 1966); Brown v. B & G Crane Service, Inc., 172 So.2d 708 (La.App. 4th Cir. 1965).
To obtain a summary judgment it is not sufficient to prove that it is unlikely that plaintiff may recover, nor that the showing then made preponderantly indicates there is no liability. Ferina v. Howard, 285 So.2d 805 (La.App. 3rd Cir. 1973); Lachney v. Employers Casualty Co., 281 So.2d 761 (La.App. 3rd Cir. 1973); Banes v. Prinz, 185 So.2d 50 (La. App. 4th Cir. 1966).
Instead, the burden of proof is on the mover to show that there is no genuine *386 issue of material fact. Any reasonable doubt as to the existence of such an issue is resolved against the mover and in favor of a full trial on the merits. Lachney v. Employers Casualty Co., supra; Bodcaw Co. v. Enterkin, 273 So.2d 325 (La.App. 3rd Cir. 1973).
Until the movant discharges this burden, the obligation of countering by the adverse party does not arise. Landry v. E. A. Caldwell, Inc., 280 So.2d 231 (La.App. 1st Cir. 1973); Latter & Blum, Inc. v. Von Ruekfrang, 249 So.2d 229 (La.App. 4th Cir. 1971).
It is not the function of the court to determine or even inquire into the merits of the issues raised on the motion for summary judgment, but rather it must limit itself to a determination of whether there is a genuine issue of material fact. Metoyer v. Aetna Insurance Co., supra; Owens v. A. A. A. Contracting Co., 219 So.2d 226 (La.App. 1st Cir. 1969).
In addition the weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La.App. 4th Cir. 1972).
Neither is it proper for the court to determine the issue of credibility of the witnesses on this motion. Lachney v. Employers Casualty Co., supra.
Furthermore, summary judgment procedure is not appropriate when based upon affidavits, etc. offered to establish subjective facts such as motive, intent, malice, good faith, or knowledge. These simply are not the types of issues which are appropriate for such determination and disposition. Fontenot v. Aetna Insurance Co., 225 So.2d 648 (La.App. 3rd Cir. 1969).
Although the trial judge rendered excellently written reasons, showing very extensive time and deliberation spent in coming to the decision that no genuine issue as to material facts existed, we cannot lose sight of the established jurisprudence insofar as summary judgments are concerned. When there is any doubt as to the existence of an issue it is resolved in favor of a full trial on the merits.
As aforementioned, we have concluded that the affidavits, depositions, and accompanying documents were enough to establish the existence of a genuine issue of material fact. In our opinion a genuine issue exists as to whether Mobil was justified in the initial and subsequent suspension of royalty payments and as to whether Mobil was ever placed in default.
In addition the District Judge's written reasons indicate to us that he actually weighed the evidence presented and concluded that the evidence preponderated in favor of Mobil and that Mobil was in good faith and had a legal right to suspend royalty payments. As aforementioned, the court also in effect assessed the credibility of Duke's testimony insofar as the March 18th meeting was concerned. In doing so that trial court was in error and the summary judgment in favor of Mobil must be reversed and set aside.
For similiar reasons we think the trial judge was incorrect in sustaining defendant's exception of prematurity. Said exception is based on the ground that plaintiff failed to make demand for payment of the royalties, i. e. did not place Mobil in default, prior to institution of the lease cancellation suit. This is a question of fact which we feel should be determined on the trial of the merits of the case and is not the type of situation envisioned by the drafters of LSA C.C.P. Arts. 423, 926, to be determined under an exception of prematurity. See Superior Oil Co. v. Humble Oil & Refining Co., 257 La. 207, 241 So.2d 911 (1970); Mathews v. Louisiana Industrial Life Insurance Co., 11 So.2d 80 (La.App. 1st Cir. 1942).
However, we would like to point out that because of the limited nature of our ruling, we do not intend to foreclose the same conclusion reached herein by the trial *387 judge, i. e. that Mobil was in fact justified in its suspension of royalty payments, and that subsequent thereto it was not placed in default, if upon production of the evidence in a full trial on the merits it is found by a preponderance of the evidence that plaintiffs are unable to show they are entitled to cancellation of the lease. We only hold that summary judgment procedure and the exception of prematurity are not applicable herein.
For the above and foregoing reasons the judgment of the District Court is reversed and the case is remanded to the Fourteenth Judicial District Court, Parish of Cameron, for further proceedings. Costs of these summary judgment proceedings, both at trial and on appeal, are assessed against defendants-appellees. All other costs to await final determination.
Reversed and remanded.
HOOD, J., dissents, being of the opinion that the judgment appealed from is correct.
NOTES
[1] That part of the division order under which Mobil relies reads as follows: "Satisfactory abstracts and other evidence of title will be furnished to you at any time on demand. In the event of a failure to so furnish such evidence of title, or in the event of a dispute at any time concerning title, you may hold the oil run or its proceeds, without interest, until indemnity satisfactory to you has been furnished." From the record, however, we find no demand by Mobil of proof of title from USOLA-Ltd., nor did it continue to make payments to USOLA-Ltd. under the terms of the division order.