YELVERTON, Judge.
This declaratory judgment action sought a ruling that a gas purchase contract has been rendered impossible to perform because of the fortuitous event of the repeal of a law. Louisiana Intrastate Gas Corporation (LIG) is the plaintiff and one of the contracting parties. Walsh Brothers-Gahagan, Ltd., Sawyer Drilling & Service, Inc., Harry M. Jarred, Caroline A. Crawford, W.J. Atkins, Commercial National Bank in Shreveport, and William J. Atkins, co-trustees, are the defendants, and, hereinafter referred to as the WALSH GROUP, they constitute the other party to this contract. The gas purchase contract under consideration had a beginning date of May 1, 1974, and called for LIG to purchase from the WALSH GROUP gas produced from Gahagan Field in Red River Parish. By various amendments, the contract was extended and is now scheduled to end on April 30, 1994.
The gas purchase contract between these parties adopted the price formula written into Section 103 of Title I of the Natural Gas Policy Act of 1978 (NGPA). The Natural Gas Wellhead Decontrol Act of 1989 repealed Title I of the NGPA effective January 1, 1993. The gas purchased under the contract was unregulated, and therefore it was not Section 103 gas. Nevertheless, the parties used the pricing formula set forth in Section 103 as the contract way of determining the price for any given month. The declaratory judgment which LIG sought in the trial court was a holding that the repeal of the NGPA, which eliminated Section 103 as a law, made it impossible for the parties to determine the price for their gas, and a declaration that *539 without a price, the contract failed. The issue before the court was whether the price formula built into Section 103 of Title I of the now repealed NGPA still controls the contract price in this gas purchase contract. The trial court granted summary judgment to LIG declaring that the gas purchase contract became unenforceable for failure of price. For reasons which follow, we reverse and remand.

BACKGROUND FACTS

The last contract amendment reflecting a renegotiation of the price by the parties took place in 1979. It was by that amendment also that the contract was extended to May 1, 1994. The renegotiated price provision in the contract was Paragraph 3.1, which provides:
3.1 Price: Subject to the provisions of this Article and to the provisions of the General Terms and Conditions attached hereto, the price to be paid by Buyer to Seller for gas taken, or required to be paid for when not taken, shall be as follows:
Effective May 1, 1979, the price payable shall be the maximum lawful price established for the month of May 1979, for gas from new onshore production wells pursuant to Section 103 of the Natural Gas Policy Act of 1978; and Effective May 1, 1980, the price payable thereafter shall be the maximum lawful price established each month during the term hereof for gas from new onshore production wells pursuant to Section 103 of the Natural Gas Policy Act of 1978.
Section 103 of the NGPA set a maximum lawful price for the month of April 1977, and then stated the formula for determining the maximum lawful price for any month thereafter, in these words:
(B) in the case of any month thereafter, the maximum lawful price, per million Btu’s, prescribed under this paragraph for the preceding month multiplied by the monthly equivalent of the annual inflation adjustment factor applicable for such month.
The summary judgment evidence indicates that this was the price formula which the parties have been using prior to the present suit. The formula for the “monthly equivalent of the annual inflation adjustment factor” is defined in the NGPA, and, according to the summary judgment evidence, the current statistics necessary for computing every month’s price are readily obtainable from Survey of Current Business, a government publication of the U.S. Department of Commerce.
These parties were before us in 1987. Walsh Bros. v. Celeron Corp., 510 So.2d 1282 (La.App. 3d Cir.), writ denied, 513 So.2d 293 (La.1987). The issue in that appeal was not the same as the issue in this appeal, but the subject matter was.. The subject was the interplay between Section 103 of the NGPA and Paragraph 3.1 of this gas purchase contract. When LIG and the WALSH GROUP agreed in 1979 that Section 103 would be the benchmark for their price, it was already provided in Section 103 that a second pricing mechanism for new onshore gas would become effective on January 1, 1985. Thus, as of January 1, 1985, there were two prices in effect for natural gas under Section 103. In 1987 LIG contended that the gas purchase contract became null and void as of January 1, 1985, for lack of a certain, determinable price. LIG argued that a certain, definite price payable by it to the WALSH GROUP under the gas purchase contract could not be ascertained and therefore the contract could no longer be enforced. This court rejected that argument in 1987 and held that the phrase “maximum lawful price” used in the contract between the parties meant the highest price established for any given month by Section 103. This court interpreted the contract to mean that the price for each month during the term of the amended contract from 1979 through 1994 would be tied to Section 103. We recognized that the gas sold was not Section 103 gas, and that the technical terms found in Section 103 relating to regulated gas were not applicable. We stated that the parties used Section 103 “as a pricing mechanism”, and that “Walsh and LIG simply used Section 103 for its price formula.” We held that the contract was enforceable.

*540
THE EFFECT OF THE REPEAL OF SECTION 103

In the current suit, LIG obtained a summary judgment holding that the repeal rendered the contract unenforceable for failure of the price.
Appellate courts review summary judgments de novo under the same criteria that govern district court’s consideration of whether summary judgment is appropriate. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the material before the court must be viewed in the light most favorable to the party opposing the motion. The party who defended against the motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Schroeder v. Board of Sup’rs, 591 So.2d 342, 345 (La.1991).
LIG’s argument is that the repeal of Section 103 made LIG’s ability to pay the paragraph 3.1 price impossible and thus the contract is unenforceable. The WALSH GROUP’S argument is that the price established under paragraph 3.1 is not impossible because the parties simply referred to Section 103 for its price formula and that formula is still capable of computation.
In a conventional obligation, the nature of that relationship is governed by the agreement of the parties. Hence, the interpretation of a contract is the determination of the common intent of the parties. La.Civ.Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La.Civ.Code art. 2046. Also, in determining the meaning of the words of a contract, they are to be given their generally prevailing meaning. La.Civ.Code art. 2047. Schroeder, 591 So.2d at 345. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La.Civ. Code art. 2049.
La.Civ.Code art. 2439 requires three circumstances to concur to perfect a contract: the thing sold, the price and the consent. La.Civ.Code art. 2464 requires that the price of a sale must be certain, that is to say, fixed and determined by the parties. Although there must be consent to give and to accept a price, it is not essential that the specific sum of the sales price be stated at the time of contracting. The parties can agree that the price may be ascertained by computation or that the price may be fixed by arbitration. Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171, 1172 (La.1980).
This court found in the 1987 appeal, 510 So.2d at 1287, that “[sjince the contract gas was not Sec. 103 gas, Walsh and LIG simply used Sec. 103 for its price formula.” The court went on to hold that the price formula therein that resulted in the highest price for a given month would be the formula utilized.
The language of the contract itself also states that the price would be the “maximum lawful price established each month ... pursuant to Section 103.... ” (emphasis ours) Webster’s Dictionary defines “pursuant to” as “in carrying out; in conformity with; according to.” This language suggests that the parties contemplated determining a price according to the formula utilized by Section 103, especially since the parties were not legally bound to use Section 103.
The WALSH GROUP introduced the affidavit of Arnold Lincove, a certified public accountant with extensive experience in the area of oil and gas accounting. Lincove’s affidavit explains that the formula used in computing the maximum legal price under Section 103 is still available for use. The only factor which changes month to month is the quarterly percent change in the Department of Commerce’s preliminary estimate of the GNP implicit price deflator used to compute the inflation adjustment factor. He stated that the GNP implicit price deflator is published monthly by the Department of Commerce in Survey of Current Business *541 and is available at government depository libraries. The same information can also be obtained directly from the Department of Commerce by writing or calling. He also worked with the computer spreadsheet provided by the Federal Energy Regulatory Commission which confirmed the accuracy of his calculations. Examples of how to calculate the price were also included.
A sound argument can be made that the price is as readily determinable under Section 103 as repealed as it was when Section 103 was the law. Arguably, Section 103 was used by these parties for its formula, not because it was a law affecting them. If so, its repeal did not make the formula disappear. The parties might still use the formula to figure the price, as that may have been their intent all along. There is summary judgment evidence that all that will be necessary for the parties to do to continue to compute the monthly price under the gas purchase contract in the same manner as the prices have been consistently calculated each month since we had this case before us the first time, will be to multiply the price for December 1992, and each subsequent month’s price by the applicable inflation adjustment factor published by the United States Department of Commerce. If the trial judge eventually adopts this as the preponderant side, it may be that this would be consistent with the intent of the parties, and it would carry out the contract rather than defeat it. Summary judgment in favor of LIG was error.

CONCLUSION

For the foregoing reasons, we reverse the summary judgment of the trial court.
LIG has filed a motion to strike a supplemental affidavit filed by the WALSH GROUP as an appendix to their brief. We did not consider the affidavit, and therefore do not need to rule on the motion to strike.
This matter is remanded to the trial court for further proceedings. LIG will pay the costs of appeal.
REVERSED AND REMANDED.