h SAUNDERS, Judge.
Louisiana Intrastate Gas Corporation (LIG) appeals the trial court’s ruling with respect to the last sixteen or so months of a natural gas sale contract between it and ap-pellees, hereinafter Walsh or the Walsh Group, Inc., in which the trial court determined that it was possible to ascertain the price of the contract without first ascertain *1179 ing the intent of the parties. We vacate the ruling of the trial court and remand this case to the trial court so that it may determine whether the parties had reached a meeting of the minds on the subject of the pricing of the natural gas.

^¿PROCEDURAL HISTORY

LIG’s present appeal marks the third occasion in which this court has been called upon to reconcile the terms of an agreement initially reached between the parties by which LIG agreed to purchase from the Walsh Group natural gas. In Walsh Brothers v. Celeron Corporation, 510 So.2d 1282 (La.App. 3 Cir.), writ denied, 513 So.2d 293 (La.1987), we reversed a motion for summary judgment granted in LIG’s favor declaring the original 1974 gas purchase contract between the parties terminated. Summary judgment had been rendered on the basis that a certain definite price payable by LIG to Walsh under the gas purchase contract could no longer be ascertained in the wake of amendments to Section 103 of the Natural Gas Policy Act of 1978. Finding that the contract between the parties provided a pricing mechanism for the period in time following deregulation, we reversed the summary judgment dissolving the contract and remanded for further proceedings:
One other factor, overlooked by LIG and the trial court, indicative of the parties’ contemplation at the time of contracting that the pricing mechanism would extend beyond 1985 through the end of the contract term is the wording of the pricing amendment itself which reads in pertinent part: “Effective May 1, 1980, the price payable thereafter shall be the maximum lawful price established each month during the term hereof ...” (Emphasis added.) Webster’s New World Dictionary defines thereafter as “after that in time or sequence; following that; subsequently.” Moreover, the price clause establishes a price for each month during the term of the contract. Accordingly, the explicit language of the contract provides for a price tied to See. 103 from 1979 through 1994.
The trial court next found that prior to 1985 there was only one possible price under Sec. 103. We agree. The contract stated that the price would be the maximum lawful price established each month. Establish means “to order, ordain, or appoint ... permanently.” Although See. 103 provided the formula for the possible calculation of more than one price, 18 C.F.R. Ch. 1 Sec. 271.101, a publication of the monthly price of gas under Sec. 103 which utilized the annual inflation adjustment factor, established only one price pri- or to January 1,1985. The contract called for an established price, not only the capability to formulate one. Indicative of the parties’ understanding in this regard was the acceptance by Walsh of the established Sec. 103(b)(1) price until |3January 1, 1985. Therefore, as provided by the contract, only one price was established prior to January 1,1985.
The trial court also concluded that the parties’ use of the term, maximum lawful price, in the pricing provision was equivalent to the ceiling price in effect under Sec. 103 at the time of the renegotiation in 1979, and not the highest price established in Sec. 103 after January 1, 1985. We disagree. When informed and experienced parties contract they do not ordinarily bind themselves to unreasonable, absurd, inequitable, or unjust obligations. Oil Field Supply and Scrap Material Co. v. Gifford Hill and Co., 204 La. 929, 16 So.2d 483 (1943). The words of a contract must be given their generally prevailing meaning. LSA-C.C. Art.2047. Both LIG and Walsh, sophisticated participants, well versed in petroleum contracting, were readily cognizant that the gas which formed the object of this contract did not qualify for treatment as Sec. 103 gas. Since the contract gas was not Sec. 103 gas, Walsh and LIG simply used See. 103 for its price formula. With respect to parties selecting a price formula under Sec. 103 for gas which did not have to qualify as Sec. 103 gas, the respective references in Secs. 103(b)(1) and (b)(2) to maximum legal prices are inapplicable as technical terms, and accordingly the potential of having two maximum legal prices without a basis to conclude which should prevail, is obviated. LIG’s attempt to interject that there is yet a third price *1180 for gas, namely the deregulated price is misplaced. There is no deregulated price established in Sec. 103. Therefore “maximum” means maximum, i.e., the highest price established for any given month by See. 103 whether it be that of subsection (b)(1) or (b)(2).
The law between the parties is the contract. LSA-C.C. Art.1983; Pogo, supra. The contract at issue is a gas purchase contract expressed in explicit language. The wording of the contract is simple and means simply what it says. Therefore we conclude that LIG is contractually bound by its agreement with Walsh as amended by the parties on July 27, 1979, at the maximum lawful price pursuant to Sec. 103.
This case was presented to us in a posture where the trial court granted LIG’s motion for summary judgment and denied Walsh’s motion for partial summary judgment on the question of the viability of the contract.
Our jurisprudence is entrenched with the sound principle that summary judgment is not a substitute for trial and that it is further inappropriate as a procedural device when affidavits are offered to establish subjective facts such as intent. Mecom v. Mobil Oil Corporation, 299 So.2d 380 (La.App. 3rd Cir.1974), writ denied, 302 So.2d 308 (La.1974). In the present case the parties filed copies of their contracts through the years as well as the correspondence between them relative to the 1979 price renegotiations, and stated in an affidavit to the trial court, “[T]his Stipulation contains all the evidence of the parties’ intention and a trial on the merits would not establish any further evidence of the parties’ intention.” We concluded that as a matter of lawUthe trial court erred in its determination that the contract between Walsh and LIG was not enforceable. Our decision in this regard was premised on the contract itself and did not entail further investigation into extrinsic evidence to establish the subjective question of the intent of the parties. We found that the contract said it all. Accordingly, there being no question of material fact, the trial court was incorrect as a matter of law, and therefore Walsh was entitled to a partial summary judgment for the same reasons relied upon for our reversal of the trial court’s decision.
For the foregoing reasons, the judgment of the trial court is reversed and set aside.
Id., 510 So.2d at 1286-87.
A similar issue presented itself in Walsh Brothers II, Louisiana Intrastate v. Walsh Brothers-Gahagan, 626 So.2d 538 (La.App. 3 Cir.1993), writ denied, 93-2971 (La.1/28/94), 630 So.2d 799. In that case, it was again argued that certain changes in the NGPA, these effective January 1, 1993, made LIG’s ability to pay the contractual price impossible and the contract, accordingly, was unenforceable. For essentially the same reasons as in Walsh I, we reversed the summary judgment rendered by the trial court on the basis that the parties might have intended the pricing mechanism of Section 103 of the NGPA to control the terms of the relationship even after the amendments.
A sound argument can be made that the price is as readily determinable under Section 103 as repealed as it was when Section 103 was the law. Arguably, Section 103 was used by these parties for its formula, not because it was a law affecting them. If so, its repeal did not make the formula disappear. The parties might still use the formula to figure the price, as that may have been their intent all along. There is summary judgment evidence that all that will be necessary for the parties to do to continue to compute the monthly price under the gas purchase contract in the same manner as the prices have been consistently calculated each month since we had this case before us the first time, will be to multiply the price for December 1992, and each subsequent month’s price by the applicable inflation adjustment factor published by the United States Department of Commerce. If the trial judge eventually adopts this as the preponderant side, it may be that this would be consistent with the intent of the parties, and it would carry out the contract rather than defeat it. Summary judgment in favor of LIG was error.
*1181 LaIntrastate v. Walsh Bros.-Gahagan, 626 So.2d at 541.

hTHE PRESENT APPEAL

On remand following our judgment in Walsh II, a trial was conducted on February 21, 1995, April 2, 1996, and May 1, 1996, following which judgment was rendered May 20, 1996, declaring that the gas purchase contract entered into by and between LIG and the Walsh Group was legally effective from January 1,1993, through April 30,1994, and that the contract contained a legally certain price. The judgment further fixed a dollar amount, which on June 3, 1996, was amended to include $1,905,421.35 in principal, $484,516.25 in interest, plus interest of 10% after April 2, 1996, on the unpaid principal balance until paid.
From this judgment, LIG currently appeals, assigning five (5) errors. Its first two assigned errors suggest that the trial court misinterpreted our opinion in Walsh II, resulting in a prejudicial judgment being rendered against it.
We find these arguments both convincing and dispositive. Consequently, we also find merit in appellant LIG’s fifth assigned error, which complains of the trial court’s exclusion of certain proffered evidence that goes to the issue of the parties’ intent.
In rendering its most recent judgment, the trial court improperly took our opinion in Walsh II to mean that on remand “the sole factual issue in the case” would be the determination of whether the Section 103 price formula discussed at length in Walsh I and Walsh II was practicable; in fact, the question on remand after Walsh II was whether the parties had intended for the contract’s provision referring to Section 103 for its price formula to survive Section 103’s repeal. While the factual conclusion of the trial court that the Section 103 pricing mechanism, if contemplated by the parties to control the relations of the parties regardless of subsequent changes in the NGPA, was workable is undoubtedly relevant, it does not alone answer the question raised by Walsh II, which remains vital to this day.
[6The question thus becomes who, between us and the trial court, is in a position to answer the question, bearing in mind our goals of dispensing justice that is both equitable and prompt. The record of these proceedings is complete, and, as an appellate court, we are vested by the Louisiana Constitution to make determinations of fact. Ordinarily, in such situations, judicial economy is best served by our reviewing the record and rendering a prompt decision rather than to remand the matter, with all its attendant delay. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). However, as the same supreme court observed in Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980):
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.
This is not to say, and Gonzales should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
In this ease, we conclude that a remand is in order so that the trial court may fairly determine the intent of the parties. Moreover, we find that the evidence and foregoing reasons support LIG’s fifth assigned error, that the trial court erroneously neglected to admit or consider the admissible probative evidence LIG sought to introduce bearing on the parties’ intent, including the testimony of LIG’s representative, Dan Freeman, and questioning of Walsh’s Vice President.
Accordingly, a remand is warranted in accordance with Ragas, 388 So.2d 707, so that the trial court may consider the evidence and *1182 explicitly determine the parties’ intent vis-a-vis the Section 103 pricing scheme contained in the contract signed by them.
DECREE
For the foregoing reasons, the judgment of the trial court is vacated and this case is remanded so that the trial court may conduct a Ml hearing, consider all admissible evidence, and render a considered decree on the subject of the parties’ intent as to whether the Section 103 pricing formula controls in the wake of its repeal.
JUDGMENT VACATED; REMANDED.